IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID BERNSTEIN, AS EXECUTOR OF THE ESTATE OF LEONARD DAVID BERNSTEIN, DECEASED,<br><br>    Plaintiff/Counter-Defendant,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>    Defendant/Counter-Plaintiff/Cross-Plaintiff/Third-Party Plaintiff.<br><br>CHRISTOPHER BAYOUTH,<br>    Defendant/Cross-Defendant,<br><br>v.<br><br>SHERYL DIANNE BERNSTEIN,<br><br>    Third-Party Defendant. | Case No. CIV-22-1009-PRW |

### ORDER

Before the Court are State Farm Fire and Casualty Company's ("State Farm's") Motion to Realign Parties (Dkt. 4) and David Bernstein's Motion to Remand (Dkt. 18), which Sheryl Dianne Bernstein has joined (Dkt. 30).

### *Background*

This is a declaratory judgment action regarding the scope of insurance coverage. In 2022, State Farm issued a personal liability insurance policy in the names of Leonard David Bernstein, the now-deceased father of Plaintiff/Counter-Defendant David Bernstein, and Sheryl Dianne Bernstein, Leonard's wife. Shortly thereafter, the elder Mr. Bernstein, suffering from a delusion,

1

shot and injured his co-worker, Christopher Bayouth. Mr. Bayouth filed a lawsuit in Oklahoma County against the elder Mr. Bernstein, who passed away soon after, and Mrs. Bernstein. David Bernstein was appointed the executor of his father's estate and was substituted as a defendant in the personal injury suit.

Pursuant to the terms of the insurance policy, State Farm provided a defense for Mrs. Bernstein in that suit and acknowledged its obligation to pay any judgment for actual damages that may be rendered against her. Initially, State Farm did not provide a defense for the elder Mr. Bernstein or his estate. As a result, David Bernstein filed this declaratory judgment action in the District Court of Oklahoma County, listing State Farm and Mr. Bayouth as defendants, seeking a declaration that State Farm was obligated by the terms of the insurance policy to provide a defense for his father's estate, and pay any judgment rendered against it, in the underlying personal injury suit. State Farm began providing a defense in the underlying suit under a reservation of rights, and, before being served in the declaratory judgment action, removed it to this Court.

State Farm acknowledges that Mr. Bernstein and Mr. Bayouth are both residents of Oklahoma, and therefore that diversity jurisdiction is not satisfied. However, along with its Notice of Removal (Dkt. 1) State Farm moved to realign the parties (Dkt. 4), arguing that aligning Mr. Bernstein and Mr. Bayouth together would better reflect their interests, and that doing so would satisfy diversity. State Farm then filed declaratory judgment crossclaims against Mr. Bernstein and Mr. Bayouth (Dkt. 5), as well as a third-party complaint against Mrs. Bernstein (Dkt. 6). Mr. Bernstein then filed his Motion to Remand (Dkt. 18), which Mr. Bayouth and Mrs. Bernstein have joined (Dkts. 26, 30).

*Legal Standard*

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states . . . ."[1] This grant of jurisdiction requires complete diversity of citizenship between plaintiffs and defendants.[2] In addition, "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants."[3] This right of removal is limited by the forum defendant rule, which states that "a civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."[4]

In determining whether diversity jurisdiction is satisfied, courts are not bound by the plaintiff's framing of the case and alignment of the parties.[5] Rather, courts have a duty to "look beyond the pleadings, and arrange the parties according to their sides in the dispute."[6] In the Tenth Circuit, realignment decisions are governed by the substantial-conflict test.[7] Under that test, "a

---

[1] 28 U.S.C. § 1332(a).

[2] *See, e.g.*, *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); *Depex Reina 9 P'ship v. Tex. Intern. Petroleum Corp.*, 897 F.2d 461, 463 (10th Cir. 1990).

[3] 28 U.S.C. § 1441.

[4] 28 U.S.C. § 1441(b)(2).

[5] *See* 13E Wright & Miller, *Federal Practice and Procedure* § 3607 (3d ed. 2009).

[6] *City of Dawson v. Columbia Ave. Sav. Fund, Safe Deposit, Title & Trust Co.*, 197 U.S. 178, 180 (1905); *see also City of Indianapolis v. Chase Nat. Bank of New York*, 314 U.S. 63, 69–70 (1941).

[7] *Price v. Wolford*, 608 F.3d 698, 704–05 (10th Cir. 2010).

party need not be realigned so long as it has an actual and substantial conflict with a party on the other side."[8]

Because the federal courts are courts of limited jurisdiction, "there is a presumption against [federal jurisdiction]."[9] The party invoking federal jurisdiction bears the burden of demonstrating that jurisdiction is proper.[10] Removal statues are to be strictly construed and doubts generally must be resolved against removal.[11]

*Discussion*

Before reaching the merits of the realignment issue, Mr. Bernstein raises two threshold arguments. First, he argues that removal is never appropriate before service has been effected. Second, he argues that the forum defendant rule dictates remand before the Court even considers realignment.

Mr. Bernstein's first argument,[12] that removal to federal court must be preceded by service on at least one defendant, flows from courts' consideration of the issue of "snap removal." "Snap removal"[13] occurs when a foreign defendant who has been served rushes to remove the case before his forum co-defendants are served.[14] Recall, the forum defendant rule is implicated only by

---

[8] *Id.* (citations omitted).

[9] *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citations omitted).

[10] *See id.*

[11] *See Fajen v. Found. Rsrv. Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982) (citations omitted).

[12] State Farm did not address this argument in its Response.

[13] Sometimes referred to as "preservice," "swift," "wrongful," or "jack-rabbit" removal. *Cincinnati Ins. Co. v. Omega Elec. & Sign Co., Inc.*, 652 F. Supp. 3d 879, 883 (E.D. Mich. 2023).

[14] *See Tex. Brine Co., L.L.C. v. Am. Arb. Assoc., Inc.*, 955 F.3d 482, 485 (5th Cir. 2020).

"parties in interest properly joined and served."[15] Some courts have upheld snap removal as a reasonable interpretation of that statutory language.[16] Others disallow snap removal, reasoning that it represents a subversion of Congress's will in enacting the forum defendant rule in the first place.[17] Still others carry on to a distinct but related question: even if a foreign defendant can "snap" remove before his forum co-defendants are served, does it follow that a foreign defendant can remove before *he himself* is served?[18]

Many of the courts to consider this last question have answered in the negative.[19] This conclusion is supported by the text of the removal statutes as a whole, which contemplate some form of service before a defendant may file a notice of removal.[20] It also comports with the principles laid out in the Supreme Court's decision in *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,[21] which noted that "[i]n the absence of service of process (or waiver of service by

---

[15] 28 U.S.C. § 1441(b)(2).

[16] *See, e.g.*, *Tex. Brine Co.*, 955 F.3d at 485–87; *Encompass Ins. Co. v. Stone Mansion Restaurant Inc.*, 902 F.3d 147, 152–54 (3d Cir. 2018).

[17] *See, e.g.*, *Goodwin v. Reynolds*, 757 F.3d 1216, 1221 (11th Cir. 2014); *Norwegian Air Shuttle ASA v. Boeing Co.*, 530 F. Supp. 3d 764, 768–70 (N.D. Ill. 2021).

[18] *See Coburn v. Hixson Weight Loss Center & Shot Spot, M.D., Inc.*, No. 21-CV-244-TAV-SKL, 2022 WL 164541 (E.D. Tenn. Jan. 18, 2022)

[19] *See, e.g.*, *Cincinnati Ins.*, 652 F. Supp. 3d at 881–84; *Hawkins v. Cottrell, Inc.*, 785 F. Supp. 2d 1361, 1369 (N.D. Ga. 2011); *McAboy v. Intel Corp.*, No. 21-CV-01773-IM, 2022 WL 1519081, at *3–6 (D. Or. May 13, 2022). *But see Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705–07 (2d Cir. 2019); *Novak v. Bank of New York Mellon Trust Co., NA*, 783 F.3d 910, 912–14 (1st Cir. 2015).

[20] *See McAboy*, 2022 WL 1519081, at *4–5; 28 U.S.C. § 1446(a)–(b)(1). *Gibbons*, the Second Circuit decision holding that service is not a prerequisite to removal, limited its textual analysis to the forum defendant rule, rather than considering the removal statutes as a whole. *Gibbons*, 919 F.3d at 705–07. *Novak*, the First Circuit decision reaching the same conclusion, limited its textual analysis to the notice of removal timing provision of 28 U.S.C. § 1446(b)(1). *Novak*, 783 F.3d at 912–14.

[21] 526 U.S. 344 (1999).

the defendant), a court ordinarily may not exercise power over a party the complaint names as [a] defendant."[22] Finally, it furthers the federalism principles that underlie the presumption against removal.[23] Though the Tenth Circuit has not weighed in on this question,[24] district courts within the Circuit have held that removal without service could be improper.[25] Upon review of the relevant statutes and the state of the law, this Court joins with those who have concluded that service is a prerequisite for removal. Because State Farm improperly filed its Notice of Removal (Dkt. 1) before being served in the underlying case, remand is appropriate.

Even if State Farm's removal had been proper, the Court finds that remand would nevertheless be justified. The Court rejects Mr. Bernstein's second argument, that realignment is never proper in removed cases and/or that the forum defendant rule must be applied before reaching the question of realignment. Such an approach would make impossible a Court's duty to "look beyond the pleadings, and arrange the parties according to their sides in a dispute."[26]

---

[22] *Id.* at 350–51.

[23] *See Coburn*, 2022 WL 164541, at *3.

[24] Procedural hurdles make appellate review of issues closely tied to remand decisions rare.

[25] *See In re Jean B. McGill Revocable Living Trust*, No. 16-CV-707-GKF-TLW, 2017 WL 75762, at *2 (N.D. Okla. Jan. 6, 2017); *FTS Intern. Servs., LLC v. Caldwell-Baker Co.*, No. 13-2039-JWL, 2013 WL 1305330 (D. Kan. Mar. 27, 2013); *see also Howard v. Crossland Constr. Co., Inc.*, No. 17-CV-00480-TCK-FHM, 2018 WL 2463099, at *2 (N.D. Okla. June 1, 2018) (noting in dicta that removal before any service would be an absurd result); *Osburn v. Ardmore Suzuki, Inc.*, No. 21-CV-234-JWB, 2023 WL 1927991, at *4 (E.D. Okla. Feb 10, 2023) (same).

[26] *City of Dawson*, 197 U.S. at 180; *see also City of Indianapolis*, 314 U.S. at 69 ("Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants."); *Farmers All. Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1387 (10th Cir. 1978); *Pub. Serv. Co. of N.M. v. Nat'l Union Fire Ins. Co.*, No. 11-487 LH/WDS, 2011 WL 13282134, at *1–2 (D.N.M. Nov. 4, 2011). *But see Andalusia Enters., Inc. v. Evanston Ins. Co.*, 487 F. Supp. 2d 1290, 1295 (concluding, with particular reference to Alabama's declaratory judgment system, that strict interpretation of the

Therefore, the merits of the Motion to Realign (Dkt. 4) are properly before the Court. Having considered the briefings on the issue, the Court finds that realignment is not required in this circumstance, and therefore that the requirements for diversity jurisdiction are not satisfied.

Declaratory judgment actions concerning insurance coverage like this one typically concern two distinct duties: the duty to defend—that is, an insurer's duty to provide a legal defense for an insured in an underlying action; and the duty to indemnify—that is, an insurer's duty to pay all or some of any judgment levied against the insured in an underlying action. When an insurer claims that the policy in question provides no coverage, and that neither duty is imposed on it, the interests of the insurer and the insured are opposed. The injured party who brought the underlying action, however, may prefer that there be no duty to defend, potentially stranding the insured party with worse representation, or no representation, in the underlying action. At the same time, the injured party will usually favor the duty to indemnify, ensuring that at least part of a judgment in his favor will be satisfied.

In cases where only one or the other duty is at issue, the parties are usually aligned to match those preferences: the injured party aligns with the insurer, and against the insured, to oppose the duty to defend;[27] but the injured party aligns with the insured, and against the insurer, to advocate for the duty to indemnify.[28] But what is the proper alignment when *both* duties are at issue?[29] In

---

removal statutes requires that removal be determined based on the party lineup at the time of the pleadings).

[27] *See, e.g.*, *Preferred Chiropractic, LLC v. Hartford Cas. Ins. Co.*, No. 10-CV-972-DRH, 2011 WL 2149091, at *2–4 (S.D. Ill. May 31, 2011).

[28] *See, e.g.*, *Davis v. Great N. Ins. Co.*, 516 F. Supp. 3d 1345, 1349–50 (S.D. Fla. 2021).

[29] A line of cases suggests that, because the duty to indemnify does not "ripen" until final judgment in the underlying case, the two duties will rarely overlap. *See Dream Builders of S. Fla. Corp. v. Mid-Continent Cas. Co.*, No. 18-23123-CIV-ALTMAN, 2019 WL

jurisdictions that follow the "principal purpose" approach to the realignment analysis,[30] the duty to indemnify usually wins out, resulting in a normal configuration of "Insurer versus Insured and Injured Party."[31] While the case law is less developed in "substantial-conflict" jurisdictions, a dispute over the duty to defend is usually enough to defeat realignment, presenting an actual and substantial conflict between the insured and the injured party.[32]

Here, Mr. Bernstein asserts that State Farm owes him both duties.[33] State Farm argues that the duty to defend is not really at issue because it is providing a defense for Mr. Bernstein in the underlying suit under a reservation of rights. The Court disagrees. Not only could State Farm cease its defense of Mr. Bernstein at will, but State Farm's position in *this* case, including in its counterclaims against Mr. Bernstein, is that is has no duty to defend. The duty to defend remains a live issue, in which Mr. Bernstein and Mr. Bayouth have actual, substantial, and conflicting

---

3821552, at *3–4 (S.D. Fla. Aug. 15, 2019) (collecting cases). Applied here, that would leave only the duty to defend, with the parties properly aligned as they are now.

[30] Sometimes called the "primary purpose" or "ultimate interests" approach, adopted by the majority of circuits. *See* 13E Wright & Miller, *Federal Practice and Procedure* § 3607 (3d ed. 2009) (referring to the principal purpose approach as the "generally accepted test for the proper alignment of parties").

[31] *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1314 (11th Cir. 2012) (quoting *Home Ins. Co. of Ill. v. Adco Oil Co.*, 154 F.3d 739, 741 (7th Cir. 1998)); *see also Lott v. Scottsdale Ins. Co.*, 811 F. Supp. 2d 1220, 1224 (E.D. Va. 2011); *James River Ins. Co. v. Arlington Pebble Creek, LLC*, 118 F. Supp. 3d 1302, 1307–09 (N.D. Fla. 2015).

[32] *See, e.g.*, *Farmers Alliance*, 570 F.2d at 1387–88; *Mo. United Sch. Ins. Council v. Lexington Ins. Co.*, No. 10CV130 RWS, 2010 WL 1254657 (E.D. Mo. Mar. 24, 2010); *Am. Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 150–51 (7th Cir. 1981). *But see Brandl v. Westport Ins. Corp.*, No. 18-C-4076, 2019 WL 10784421 (N.D. Ill. Feb. 13, 2019) (seemingly discounting the duty to defend as a mere reflection of the insured and injured parties' antagonism in the underlying suit).

[33] Pl.'s Pet. (Dkt. 1-1), at 7–8.

interests.[34] As such, they need not be realigned,[35] diversity jurisdiction is not satisfied, and the case must be remanded.

### *Conclusion*

For the foregoing reasons, State Farm's Motion to Realign Parties (Dkt. 4) is **DENIED** and Mr. Bernstein's Motion to Remand (Dkt. 18) is **GRANTED**.[36] The Court Clerk is hereby directed to remand this action to the District Court for Oklahoma County, Oklahoma.

**IT IS SO ORDERED** this 9th day of January 2024.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[34] *See Mo. United*, 2010 WL 1254657, at *3 (conditional defense under reservation of rights does not eliminate dispute over coverage obligations).

[35] *Price*, 608 F.3d at 704–05. The Court notes that on December 15, 2023, the District Court of Oklahoma County dismissed the underlying personal injury suit, CJ-2022-3272, on the basis that the required path for Mr. Bayouth to seek redress, pursuant to Oklahoma's Workmen's Compensation Act, was through his employer. However, the parties have not moved to dismiss this case, and the insurance coverage and duties at issue could arise in a separate case or on appeal. Accordingly, this case is not moot, and the present disposition of the underlying case has no bearing on the above analysis.

[36] Sheryl Dianne Bernstein's Motion to Remand (Dkt 30), which simply joined Mr. Bernstein's Motion, is also **GRANTED**.